O’Malley, Circuit Judge,
concurring in part, dissenting in part.
Respectfully, I must disagree with two of the conclusions the majority reaches: (1) that the district court erred in granting summary judgment of invalidity with respect to the asserted claims of the ’437 patent; and (2) that the MFL provision in the PCRA, once triggered, is limited to the patent or patents that triggered the provision. I agree with all other aspects of the majority’s thoughtful analysis, including the ultimate conclusion that the MFL provision of the PCRA does not bar suit with respect to the products at issue in this proceeding.
I.
On my first point of disagreement, I believe that, when considered in its entirety, Mouly unambiguously teaches that its handover reference is sent over a RACH during asynchronous handover and, thus, anticipates that aspect of the asserted claims of the ’437 patent. The majority points to two errors it says the district court made—relying on arguments of Ericsson’s counsel and weighing the expert testimony from both parties against the teachings of Mouly to draw inferences therefrom. Maj. Op. at 989-92, While I do not dispute that a trial court would err if it predicated summary judgment on such findings, I do not believe the district court relied on such findings here.
The district court included a quotation of an argument by Ericsson’s counsel in the *999 portion of the court’s opinion where the court was laying out the arguments made by each party before making its findings in relation to which party’s arguments were well taken. In this portion of the opinion, the district court also laid out all of Wi-LAN’s arguments to the contrary. The district court did not directly rely on these statements when making its final determination as to what the Mouly reference discloses, which comes well after the court’s references to statements made by counsel.
The majority claims that the context provided by footnote 17 shows that the district court relied on the argument of counsel to make findings. Maj. Op. at 990-91 n.6. But the district court’s analysis as to the meaning of Mouly’s statement that the handover access message “is the only case where short access bursts are used on a dedicated channel” does not rely on statements by counsel. Instead, the district court finds Wi-LAN’s argument “inconsistent with the rest of Mouly (totaling 695 pages) and inconsistent with both Parties’ expert testimony.” J.A. 24-25. The district court then identifies the admissions of Dr. Min, Wi-LAN’s expert, as support for its holding. J.A. 25 n.18.
Complaints about the district court’s reference to expert testimony are also misplaced. The district court cited an admission by Wi-LAN’s own expert as a key piece of expert testimony. There is nothing improper about predicating summary judgment on binding admissions.
Specifically, counsel asked Dr. Min about the teachings of Mouly. The portion of Mouly counsel referred to states:
At initial assignment, or at handover between two cells which are not syn-chronised, no information can be used by either side to predict the timing advance. Signalling messages are different, but the timing advance initialisation process is very similar in both cases. The mobile station is forbidden to transmit normal bursts until it knows the new timing advance to apply.
J.A. 2394. Counsel then asked Dr. Min whether that language indicated to Dr. Min that “the communication between the mobile station and the target base station will not be on a dedicated channel until there has been a synchronization of the timing?” J.A. 1415. Dr. Min admitted that Mouly included this teaching, stating “I mean, that’s what he [Mouly] said, the mobile station is forbidden to transmit the data which is on a dedicated channel until ... the synchronization is initiated.” J.A. 1415.
Counsel then turned Dr. Min’s attention to the statement from Mouly on which Wi-LAN based its argument against anticipation, and on which the majority relies. In addressing the RIL3-RR HANDOVER ACCESS message, Mouly states, “[t]his message is the only case where short access bursts are used on a dedicated channel.” J.A. 826. Counsel asked Dr. Min whether this statement applied to only synchronous handover, and Dr. Min replied:
It can be either way. You just have to— if it’s an asynchronous handover, then you have to obtain the synchronization and then you can use it afterward. So if it’s for the synchronous handover then it’s easier, clearly, you know, you haven’t lost your synchronization. But if it’s asynchronous, then you obtain the synchronization first and then you can use it on a dedicated channel.
J.A. 1417-18. Counsel then clarified with Dr. Min that, to the extent the statement refers to an access burst being sent on a dedicated channel in an asynchronous scenario, “the synchronization takes place pri- or to the access burst being sent,” and Dr. Min stated, “[y]es, that’s right.” J.A. 1418.
*1000 Wi-LAN’s attempts to dismiss these statements as ambiguous testimony about obtaining synchronization on the dedicated channel in asynchronous handover misunderstand its place in the analysis. Dr. Min admits that a mobile device cannot transmit data on a dedicated channel until after synchronization has been completed. The mobile device therefore must transmit on the RACH prior to synchronization.
Although Dr. Min does not specifically state that the handover reference is transmitted prior to synchronization, his testimony can only support that result given the teachings of Mouly. Figure 6.37 of Mouly shows that the RIL3-RR HANDOVER ACCESS message is sent prior to the mobile device receiving the RIL3-RR PHYSICAL INFORMATION message that has the timing advance from the new base station, and therefore prior to synchronization. J.A. 826. Dr. Min admitted Mouly teaches that a mobile device “is forbidden to transmit data which is on a dedicated channel until ... the synchronization is initiated.” J.A. 1415; see also J.A. 1417-18. If the mobile device cannot transmit over a dedicated channel prior to synchronization, as admitted by Dr. Min, J.A. 1415, 1417-18, then the teaching of Mouly that “[t]his message is the only case where short access bursts are used on a dedicated channel,” J.A. 826, must apply only to synchronized handovers. In asynchronous scenarios, the RIL3-RR HANDOVER ACCESS message sent pri- or to synchronization, as shown in Figure 6.37, cannot be sent over a dedicated channel—because synchronization has not been established yet—and therefore must be sent over the RACH.
In the absence of material errors by the district court, the majority ultimately predicates its conclusion that Mouly’s teaching is ambiguous on one oddly phrased sentence in the entire reference, which encompasses hundreds of pages and includes at least seventeen pages dedicated specifically to handover execution. As explained above, however, Mouly’s teachings and Dr. Min’s admissions show that this sentence cannot apply to asynchronous handovers. Because no reasonable juror could read Mouly other than the way the district court did, or conclude that the one grammatically confusing phrase to which Wi-LAN and the majority point is enough to offset the otherwise clear teachings of Mouly, I do not find that Wi-LAN’s dispute predicated on that phrasing raises a genuine dispute of material fact to preclude summary judgment.
II.
With respect to the MFL provision of the PORA, I agree with the majority that our prior opinion, Wi-LAN USA, Inc. v. Ericsson, Inc., 574 Fed.Appx. 931 (Fed. Cir. 2014), only decided whether the assertion of after-acquired patents triggers the MFL provision. Importantly, in that set of companion opinions, we affirmed a Texas judgment that rested only on a determination of what could trigger the MFL provision and reversed a Florida judgment, finding it erred in its assessment of that same predicate issue. We expressly refused to determine the scope of the MFL provision once triggered.
Now that the MFL provision has been triggered, we must decide that reserved question. Like the majority, I do not believe our earlier decision compels the conclusion the district court reached here. Unlike the majority, however, I believe the MFL provision defines the products as to which most favored licensee status would apply, not the patents. I conclude that the reasoning of our earlier decision as well as basic rules of grammar both limits and extends (depending on one’s perspective) the MFL provision to products which in *1001 corporate the type of technology at issue in the triggering patents—all UMTS technology. Because the products at issue in this action do not incorporate UMTS technology, I agree with the majority that the MFL provision does not bar Wi-LAN’s action; I just do so for slightly different reasons.
III.
Finally, I agree that the district court properly interpreted the term Bandwidth and that, based on that construction, the trial court erred in entering summary judgment of non-infringement of the ’298 and ’014 patents.
IV.
For these reasons, I concur-in-part and dissent-in-part.